IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL V. MESA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-2324-D |
| VS. | § | |
| | § | |
| VERIZON BUSINESS NETWORK | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this employment discrimination case, the court must decide on defendant's motion for partial summary judgment whether plaintiff has exhausted his administrative remedies, whether certain acts constitute adverse employment decisions, and whether a reasonable trier of fact could find that defendant's reason for terminating plaintiff's employment is pretextual. The court must also decide whether a reasonable trier of fact could find in favor of plaintiff on his request for exemplary damages and claims for breach of contract and quantum meruit. For the reasons that follow, the court grants defendant's motion for partial summary judgment and raises other summary judgment grounds *sua sponte*.

I

This is a suit by plaintiff Michael V. Mesa ("Mesa") against defendant Verizon Business Network Services, Inc. ("Verizon") alleging that he was discriminated against on the basis of national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and disability, in violation of the Americans with

Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*  Mesa also alleges claims of breach of contract and quantum meruit.

Mesa was formerly employed as a Senior Account Executive at Verizon.[1]  In this position, he was responsible for "selling . . . the full range of Voice, Data and IP Solutions offered by Verizon." D. App. 137.  Mesa alleges that he was denied a promotion, transferred unprofitable accounts, investigated and terminated, and then denied commission advances on account of his Mexican and Sicilian descent and his diagnosed Attention Deficit Disorder ("ADD").[2]  He alleges that Verizon paid a Hispanic salesperson, Andy Estrada ("Estrada"), only minimum commissions because of Mesa's national origin and disability.  Mesa also asserts, as the basis of his breach of contract and quantum meruit claims, that Verizon failed to pay him earned commission.

Verizon moves for summary judgment on all claims except Mesa's reasonable accommodation claim under the ADA.  Mesa opposes the motion.

_____

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to Mesa as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Mesa also asserts a reasonable accommodation claim under the ADA.  The court does not address this, however, because Verizon states expressly in its partial summary judgment motion that "it has chosen not to move for summary judgment [on] this claim." D. Br. 1 n.1. The court also declines to consider the arguments that Mesa presents regarding the reasonable accommodation claim.

II

Because Verizon is moving for summary judgment on claims as to which Mesa will bear the burden of proof at trial, it can obtain summary judgment as to the claim in question by pointing the court to the absence of evidence on any essential element of the claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Mesa must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Mesa on the claim in question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mesa's failure to produce proof as to any essential element of the claim renders all other facts regarding that claim immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment for Verizon is mandatory as to the claim in question if Mesa fails to meet this burden. *Little*, 37 F.3d at 1076.

The court can raise *sua sponte* that summary judgment is warranted on a particular claim, provided it affords Mesa notice and a fair opportunity to respond. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

III

Under Title VII, it is an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To prevail on his claims under Title VII and the ADA, Mesa must present direct or circumstantial evidence that his national origin or disability was a motivating factor for Verizon's adverse employment action. *See, e.g., Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (ADA); *Siddiqui v. AutoZone West, Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (Title VII).  "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case).  "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98.

Where the plaintiff does not present direct evidence of discrimination, the court applies the "modified *McDonnell Douglas* approach" for both the Title VII and ADA claims.

- 4 -

*Siddiqui*, 731 F.Supp.2d at 650 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (Title VII); *Seaman*, 179 F.3d at 300 (holding that the *McDonnell Douglas* framework, which is used in Title VII cases, applies to ADA cases when only circumstantial evidence of discrimination is offered).  As modified, *McDonnell Douglas* consists of three stages.  First, Mesa must establish a prima facie case of discrimination, which "creates a presumption that [defendant] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  To establish a prima facie case of discrimination based on national origin under Title VII, Mesa may show that (1) he was within the protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action; and (4) he was replaced by someone outside the protected class, or, in the case of disparate treatment, other similarly situated employees were treated more favorably. *See, e.g.*, *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).  Similarly, to establish a *prima facie* showing of discrimination based on a disability under the ADA, Mesa must prove that (1) he suffers a disability or is regarded as disabled; (2) he is qualified for the job despite the disability; (3) he was subjected to an adverse employment action due to his disability; and (4) he was treated less favorably than non-disabled employees. *See, e.g., Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003) (quoting *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000)); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996) (per curiam) (citing *Rizzo v. Children's World Learning Ctrs., Inc.*, 84 F.3d 758, 763 (5th Cir. 1996)).

Second, if Mesa satisfies his prima facie case obligation, the burden shifts to Verizon to articulate a legitimate, nondiscriminatory reason for the employment action taken against him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Verizon's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 385.

Third, if Verizon meets its production burden, Mesa may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312. Under the pretext alternative, Mesa must "offer sufficient evidence to create a genuine issue of material fact . . . that defendant's reason is not true, but is instead a pretext for discrimination." *Id.* (internal quotation marks and citation omitted). Under the mixed-motives alternative, Mesa must offer sufficient evidence to create a genuine issue of material fact "that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Mesa's] protected characteristic." *Id.* (internal quotation marks and citation omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

IV

Mesa asserts that he was denied a promotion on the basis of his national origin and disability. Verizon moves for summary judgment on several grounds, including that Mesa

- 6 -

failed to exhaust his administrative remedies because he did not complain of the denied promotion in his charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") and the claim is not reasonably related to any of the claims raised in the charge. Mesa does not respond to this ground.

A

In mid-2010 Robert Thornton ("Thornton"), the Area Sales Vice President, posted a new position for Sales Manager, for which he was the hiring manager. Mesa discussed his interest in the position with Robert Cross ("Cross"),[3] the Sales Manager to whom Mesa reported, who recommended that he apply. Mesa then contacted Thornton to discuss the position, who directed the internal recruiter, Connie Reinmuth ("Reinmuth"), to add Mesa to the candidate list and instructed Mesa to contact Reinmuth to schedule an interview. Thornton avers that Mesa never scheduled an interview, while Mesa maintains that he was not given an interview. After interviewing candidates, Thornton selected Michelle T. Jensen ("Jensen"). Mesa contends that Jensen is a "less qualified female Caucasian." P. Br. 5. Thornton maintains that "she was the best qualified candidate" due to her experience in handling accounts of comparable size. D. App. 144. He also avers that, at the time he selected Jensen, he "was not aware that Mesa had [ADD] and had no knowledge of his national origin." *Id.*

Mesa filed a charge of discrimination with the EEOC on September 15, 2010. In the

---

[3]Cross is also referred to in the record as Robert Gene Cross or Gene Cross.

charge, Mesa alleged that he was "made to pay $12,000.00 of commissions charge backs, included in a Legal Network Security Investigation, . . . suspended with pay pending investigation," and "denied a reasonable accommodation in that the company refuses to move me in a quiet place outside of the normal employee traffic." *Id.* at 142. The EEOC later issued a dismissal and notice of rights.

B

Before bringing a Title VII or ADA claim, a plaintiff must exhaust administrative remedies by presenting an administrative claim to the EEOC. *See, e.g., McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) ("Title VII requires employees to exhaust their administrative remedies before seeking judicial relief.") (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam) ("[A]n employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court . . . . [T]he ADA incorporates by reference the procedures applicable to actions under Title VII[.]"). This requirement serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation and giving the employer some warning as to the conduct about which the employee is aggrieved. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). The scope of the action is limited to the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Young v. City of Hous., Tex.*, 906 F.2d 177, 179 (5th Cir. 1990) (quoting *Sanchez*, 431 F.2d at 466) (internal quotation marks omitted); *see also McClain*, 519

F.3d at 272 ("The scope of their administrative claims governs the scope of the class claims.") (citing *Vuyanich v. Republic Nat'l Bank*, 723 F.2d 1195, 1201 (5th Cir. 1984); *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  A complaint filed pursuant to Title VII may encompass any kind of discrimination "like or related to" allegations contained in the EEOC charge.  *Sanchez*, 431 F.2d at 466-67.[4]

The court dismisses Mesa's promotion-based claim under Title VII and the ADA at least on the ground that Mesa has failed to exhaust his administrative remedies.  *See Jefferson v. Loftin*, 2005 WL 4541891, at *6 (N.D. Tex. Mar. 16, 2005) (Fitzwater, J.) (dismissing ADA claim for failure of exhaustion); *Bernard v. ATC VanCom*, 2005 WL 139110, at *2 (N.D. Tex. Jan. 20, 2005) (Fitzwater, J.) (dismissing Title VII for failure to exhaust).  Mesa did not mention his denied promotion in his EEOC charge; nor is it reasonable to expect that the failure-to-promote claim would grow out of his charge of discrimination, given that it only addressed his commissions, investigation, suspension, and lack of accommodation.  *See McClain*, 519 F.3d at 273 ("Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative

---

[4]"There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction." *Pacheco*, 448 F.3d at 788 n.7 (5th Cir. 2006).  "Although the court has previously relied on Fifth Circuit precedent in stating that exhaustion is a requirement of subject matter jurisdiction, it has more recently reached the opposite conclusion[.]" *Dixon v. Moore Wallace, Inc.*, 2006 WL 1949501, at *7 n.12 (N.D. Tex. July 13, 2006) (Fitzwater, J.) (collecting cases), *aff'd*, 236 Fed. Appx. 936 (5th Cir. 2007).

process and peremptorily substitute litigation for conciliation.").[5]

## V

Mesa contends next that he was transferred unprofitable accounts on the basis of his national origin and disability. He alleges in his amended complaint and response brief that, in early 2009, the unprofitable accounts of another Caucasian representative on his sales team, presumably Stephen Plunkett ("Plunkett"), were transferred to him on the basis of his national origin and disability and "resulted in a chargeback of commissions to [Mesa] in the amount of $14,000." P. Br. 6, *see also* D. App. 165.[6]

Verizon moves for summary judgment on the ground that there is no evidence of such transfers. It also presents the testimony of James Dowling ("Dowling"), the Area Sales Vice President of Verizon, who avers that "[t]here is no record of any business customer accounts being transferred from [Plunkett] to [Mesa]." D. App. 165. The court holds that Verizon is entitled to summary judgment on this basis. Mesa has failed to designate specific facts demonstrating that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Little*, 37 F.3d at 1075.[7]

---

[5]Because the court is dismissing Mesa's failure-to-promote claim on this ground, it need not address the remaining arguments asserted by Verizon seeking dismissal of that claim.

[6]Because Mesa has pointed to no evidence in support of his allegations regarding the transfer of unprofitable accounts, the court summarizes the unsworn allegations in his amended complaint and brief, recognizing that they are not competent summary judgment evidence.

[7]Because the court is dismissing on this ground Mesa's Title VII and ADA claims to the extent they are based on the alleged transfer of unprofitable accounts, it need not address

VI

Mesa asserts next that he was terminated on the basis of his national origin and disability.  Verizon moves for summary judgment on several grounds, contending that (1) Mesa has failed to exhaust his administrative remedies; (2) he is unable to establish a prima facie case because he was no longer qualified for the position and there is no evidence that similarly situated employees outside of his protected class were treated more favorably; and (3) even if he can, he is unable to establish that Verizon's legitimate, nondiscriminatory reason is pretextual.

A

Verizon maintains that Mesa was terminated for submitting four fraudulent orders of International Toll Free - Dedicated ("ITFD") service.  Cross avers that, upon reviewing sales reports for the first and second quarters of 2010, he noticed that Mesa had submitted the following four ITFD orders for two Verizon customers ALON and Safety-Kleen: April 30, 2010, for ALON, earning a sales commission of $4,816.00; May 5, 2010, for ALON, earning a sales commission of $9,184.00; June 24, 2010, for Safety-Kleen, earning a sales commission of $4,000; and July 22, 2010, for ALON, earning a sales commission of $4,400. D. App. 158.  According to Cross, "ITFD is a usage-based service — the customer is only billed when the service is used so it would be possible for a sales employee to add ITFD service to a customer's order without the customer's knowledge and still earn commissions

the remaining arguments that Verizon raises in seeking dismissal of the claims.

- 11 -

for the added service." *Id.* at 153.  Cross states that he became suspicious after noticing that

the ITFD order for Safety-Kleen had a similar monthly reoccurring value and the same

product code as a previous ITFD order entered for ALON, given that "ITFD is a unique

service" and "[i]t would be peculiar to have two customers within two months of each other

order the same number of channels."  *Id.*; *see also id.* at 158.  He reported the matter to

Dowling, his supervisor.[8]  Dowling, in turn, referred the matter to the Security Department

for investigation.  Dyanne Atkins ("Atkins"), a Senior Security Investigator, conducted an

investigation on the alleged "cramming," which is "defined as an illegal sales tactic of adding

services or products to a customer's order without [its] authorization or approval."  *Id.* at 158.

While the investigation was pending, Mesa was suspended with base pay and instructed that

his commission advancement for the fourth ITFD would be held pending the outcome.[9]

Based on company records, witness statements, and Mesa's admissions, Atkins

concluded that Mesa "[s]ubmitted four fraudulent sales orders for ITFD service for Verizon

business customers ALON and Safety-Kleen without their authorization or approval

(Cramming)," and that Mesa "[r]eceived $18,000 in sales commission compensation for three

of these four orders, to which he was not entitled."  *Id.* at 157.

Atkins outlined her process in her investigative report: she examined ITFD service

---

[8]Cross avers that he "did not consider Mesa's [ADD], national origin or any other protected classification in making any employment decision with respect to Mesa."  D. App. 153.

[9]Mesa had already received commissions totaling $18,000 for the first three ITFD orders.

orders that Mesa had submitted over the past two years, but she did not detect any additional issues in the service orders.  She reviewed Mesa's email account where she located emails sent by Mesa to Verizon management confirming approval by ALON and Safety-Kleen of the ITFD service, but she could not locate an email from ALON or Safety-Kleen requesting ITFD service.  Instead, there were emails from Jim Carpenter ("Carpenter"), the ALON customer contact, and Susan Walters ("Walters"), the Safety-Kleen customer contact, requesting DS3 service, but not mentioning ITFD service.  Atkins interviewed both Carpenter and Walters, who confirmed that they did not authorize Mesa to include ITFD service on the requested DS3 service.

Atkins also interviewed Mesa.  According to Atkins, Mesa claimed during the interview that Carpenter had requested DS3 service with channelized ITFD, and that he had also "approved an additional DS3 as a 'favor' to help him meet his sales objectives."  *Id.* at 159. Mesa "admitted, however, that [Carpenter] may not have understood that ITFD services were placed on the ordered DS3s," and "that [Walters] of Safety-Kleen never approved ITFD services on the DS3."  *Id.*  Mesa allegedly explained that "any liberties he took with these sales orders were done in an effort to help his 'team' meet their sales objectives," and that "his actions were a direct result of what he felt was undue pressure being placed upon him by management to meet unrealistic expectations."  *Id.*[10]

After reviewing Atkins' investigative report, Dowling terminated Mesa in October

---

[10]Atkins avers that, "[a]t the time of [her] investigation, [she] did not know that Mesa had [ADD] and was not aware of his national origin."  D. App. 156.

2010. Dowling avers that Mesa's "employment was terminated for submitting fraudulent sales in violation of several provisions of Verizon's Code of Conduct ("Code")." *Id.* at 166.[11]

According to the termination letter, Mesa was found to violate the following Code standards:

> Sustain a Culture of Integrity
> "Verizon requires all employees to use their judgment, to be accountable for their actions and to conduct business with integrity."
>
> Create Accurate Records
> It is never appropriate to direct someone else to prepare or approve a false or misleading record and it is no defense to say that someone else directed you to make a record that you knew or had reason to suspect was false or misleading. It is also improper to intentionally take any action that leads to the creation of false or misleading records, such as withholding information from, or providing incomplete information to, someone who is preparing a record.
>
> Selling with Integrity
> Verizon policy requires that we fully, clearly and directly inform our customers of the terms and conditions of our services. Any attempt to deceive a customer will not be tolerated and may result in disciplinary action up to and including termination of employment.

*Id.* at 141 (bold font omitted).

Mesa admits that he received a copy of the Code during his employment, that he "understood that submitting a fraudulent sale would violate [the Code]," and that his "employment could be terminated for violating the [Code]." *Id.* at 45-46. He maintains,

---

[11]Dowling maintains that he "did not consider Mesa's [ADD], national origin or any other protected classification in approving Mesa's employment termination or in making any other employment decision with respect to Mesa." *Id.* at 166.

however, that his termination based on the fraudulent sales is pretextual, and that he was in fact discharged because of his national origin and disability.

B

Verizon asserts that Mesa's termination claim must be dismissed because he failed to exhaust his administrative remedies.

As the court explains above, *see supra* § IV(B), a plaintiff must exhaust his administrative remedies by presenting an administrative claim to the EEOC before bringing a Title VII or ADA suit. *See McClain*, 519 F.3d at 273; *Dao*, 96 F.3d at 789. The scope of the action is limited to the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Young*, 906 F.2d at 179 (quoting *Sanchez*, 431 F.2d at 466) (internal quotation marks omitted). A complaint filed pursuant to Title VII may encompass any kind of discrimination "like or related to" allegations contained in the EEOC charge. *Sanchez*, 431 F.2d at 466-67.

Mesa filed his charge of discrimination with the EEOC on September 15, 2010. He alleged, *inter alia*, that he was "suspended with pay pending investigation" on the basis of his national origin and disability. D. App. 142. Mesa was terminated one month later, on October 15, 2010. The EEOC did not issue a dismissal and notice of rights until November 3, 2010. Verizon emphasizes that the EEOC charge and investigative notes do not refer to Mesa's termination. Mesa responds that he complained about his suspension in the charge, and because he was "never allowed to return to work, . . . the suspension became permanent." P. Br. 8.

The court holds that Mesa has exhausted his administrative remedies as to his termination claim based on national origin and disability discrimination because such a claim could reasonably be expected to grow out of his underlying charge of national origin and disability discrimination based on his suspension.  Mesa complained of his suspension in his September 15, 2010 EEOC charge of discrimination.  His termination occurred on October 15, 2010, while his charge was still pending.  *Cf. Burns v. Air Liquide Am., L.P.*, 515 F.Supp.2d 748, 755 & n.5 (S.D. Tex. 2007) (holding that "it is inconceivable that an EEOC investigation into Plaintiff's April 19, 2004, charges of age and disability discrimination[,] [which alleged that defendants were] 'threatening my continued employment[,]' would not have included inquiry into Plaintiff's actual termination only 18 days later and nearly a year before a right-to-sue letter was issued," and distinguishing cases "where the plaintiffs were terminated after the EEOC completed its investigation and issued right-to-sue letters, and the plaintiffs failed thereafter to file new or amended charges to address the termination.").

## C

The court therefore turns to whether Mesa is basing his Title VII and ADA claims on direct or circumstantial evidence.  Certain allegations that Mesa makes in his deposition testimony and affidavit could be categorized as direct evidence of discrimination: (1) Kurt Conard ("Conard"), one of Mesa's supervisors, referred to Mesa using epithets such as "wop" or "Mexican" around twelve times per year from mid-2008 to the beginning of 2010, P. App. 12-13; (2) at a Dallas Cowboys game in the fall of 2007, Dowling required Mesa to buy his own ticket, although Verizon had purchased tickets, and stated, "Well, that's what

happens to you people," *id.* at 20; (3) at a Dallas Stars hockey game sometime between 2007 and the end of 2009, Dowling agreed with another individual, who had stated to Mesa, "You would be right there like that Mexican" waiter, *id.* at 22; and (4) Dowling chastised him and, "if there was ever an opportunity," used the terms "greaseball, wetback, [and] Mexican," *id.* at 47. It is unclear, however, whether Mesa relies on this evidence to establish direct evidence of discrimination or to prove pretext.

To the extent that Mesa may be relying on this proof as direct evidence of discrimination, the court holds that these statements are no more than stray remarks and therefore cannot provide direct evidence of discrimination to withstand summary judgment.[12] *See, e.g., McKinney v. Tex. Dep't of Transp.*, 31 Fed. Appx. 152, 2001 WL 1747646, at *3 n.15 (5th Cir. 2001) (per curiam) (holding that stray remarks "cannot provide direct evidence of discrimination sufficient to withstand summary judgment").

> For comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.

*Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (alterations and

---

[12]"Where, as here, there is not substantial evidence of pretext, we have held that it is appropriate to analyze such stray remarks as direct evidence of discrimination under *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996)." *McKinney v. Tex. Dep't of Transp.*, 31 Fed. Appx. 152, 2001 WL 1747646, at *3 n.15 (5th Cir. 2001) (per curiam); *see also Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 404 n.7 (5th Cir. 2001) ("[I]n a case such as this, where there is no other evidence of pretext, it is appropriate to analyze such comments as direct evidence of discrimination, apart from the *McDonnell Douglas* framework.").

internal quotation marks omitted) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)).

Even assuming that Conard engaged in the conduct in question, Mesa has failed to adduce evidence that would enable a reasonable trier of fact to find that Conard had any "leverage, or exerted influence," over Dowling's decision to terminate Mesa. *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007) ("[T]his Court looks 'to who actually made the decision or caused the decision to be made, not simply to who officially made the decision.' Thus, 'if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker,' the worker's discriminatory animus may be attributed to the employer.") (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). Thus Conrad's comments fail at least on the third prong. The events at the Dallas Cowboys and Dallas Stars games also fail, at least for the reason that they were not "proximate in time to the terminations" and not "related to the employment decision at issue." *Auguster*, 249 F.3d at 405 (holding that comments were stray remarks because, *inter alia*, they "were made nearly a year before the decision [at issue]" and "there is no substantial evidence that the comments related to [the superintendent's] ultimate decision"). And Mesa has not identified when Dowling used the alleged epithets, and a reasonable trier of fact could not find that the comments related to his termination. *See id.*

D

Because Mesa's Title VII and ADA claims are based on circumstantial evidence, he must first establish a *prima facie* case of discrimination. *See Rachid*, 376 F.3d at 312. Verizon asserts that Mesa is unable to demonstrate that he was qualified for the position "because of his involvement in submitting fraudulent sales orders without the customers' approval," D. Br. 18, and that similarly situated employees were treated more favorably. Because the claims fail on other grounds, the court will assume *arguendo* that Mesa has established a prima facie case. *See, e.g., Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *11 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (assuming *arguendo* that plaintiff had established prima facie case), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012) (on rehearing).

The burden has therefore shifted to Verizon to proffer a legitimate, nondiscriminatory reason for Mesa's termination. Verizon has introduced evidence that it terminated Mesa in good faith after a security investigation concluded that he had submitted four fraudulent orders for ITFD service, in violation of the Code. Misconduct of this type constitutes a legitimate, nondiscriminatory reason for terminating someone's employment. *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *6 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) ("An employee's violation of a company work rule is a legitimate, nondiscriminatory reason for discharging him.").

Although Mesa maintains that Verizon's reason is pretextual, he has failed to produce evidence that would permit a reasonable trier of fact to find that Verizon's reason is a pretext

for discrimination.  Mesa relies on his deposition testimony and affidavit to argue that he was not given time to provide Atkins with evidence; that he had no control over the orders because Todd French entered the order; that the third order was merely a "shell" order to correct the first two orders; that Walters had approved the ITFD service, that Walters said she "couldn't believe it" when he told her he was being released, P. App. 55; that Carpenter said he did not know what was fraudulent about his work with ALON, and that "cramming" is not described or defined in the Code.  Although Mesa criticizes Atkins' investigative process and its conclusion, his arguments do not provide a reasonable trier of fact a basis to question Dowling's decision to rely on the investigative report.  And even if Atkins' conclusions were incorrect, this is an insufficient basis to prove pretext.  *See, e.g., Dickerson v. Metro. Dade Cnty.*, 659 F.2d 574, 581 (5th Cir. Unit B Oct. 1981) (observing that even if employer was wrong in its evaluation of employee's absenteeism, it did not violate Title VII if it acted on reasonable belief); *Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. Unit A Mar. 1981) (recognizing that mistaken but good-faith belief that employee violated employer's rules was sufficient to rebut *McDonnell Douglas* inference that employee's discharge was for impermissible reasons); *Coltin v. Corp. for Justice Mgmt., Inc.*, 542 F.Supp.2d 197, 204 (D. Conn. 2008) (holding that employee failed to show that employer's reason for terminating him, even if shown to be wrong or mistaken, was pretextual, and quoting Third Circuit holding that, "[t]o discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer,

not whether the employer is wise, shrewd, prudent or competent.") (alteration in original) (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331 (3d Cir. 1995)).

Mesa points next to his deposition testimony, in which he testified that he was terminated on the basis of his ADD because of his "lack of ability to explain the mess."  P. App. 58.  His subjective belief, however, is insufficient to create a genuine issue of material fact.  *See Arrieta*, 2008 WL 5220569, at \*10 (holding that "an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason") (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc)).

Mesa also relies on a congratulatory letter he received for his July 2010 performance, which included a sale for which he was terminated.  This letter is dated August 31, 2010.  According to Dowling's declaration, he referred the matter to the Security Department on September 1, 2010, *after* the congratulatory letter was written.  Thus no reasonable trier of fact could conclude that Verizon's reason is pretextual based on this evidence.

Finally, Mesa asserts that "there are very material questions of fact as to whether the customers did in fact order the services (why not, since they were free) and whether Verizon conducted a fair investigation, or a witch hunt motivated by the prejudices and biases of [his] supervisor and area vice president who wanted to be rid of [him] for illegal reasons."  P. Br. 2.  The bare assertion that a fact issue exists is insufficient to create a genuine fact issue.  *Byers v. Navarro Cnty.*, 2012 WL 677203, at \*6 n.19 (N.D. Tex. Mar. 1, 2012) (Fitzwater,

- 21 -

C.J.) ("[U]nsubstantiated or conclusory assertions that a fact issue exists will not suffice.")
(alteration in original) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380
(5th Cir. 1998)).[13]

Accordingly, the court dismisses Mesa's termination-based claim under Title VII and
the ADA.[14]

## VII

Mesa asserts next that Verizon discriminated against him on the basis of his national
origin and disability because it paid another Hispanic salesperson, Estrada, only minimum
commissions.   Verizon contends that this allegation has no bearing on Mesa's claim of

_____

[13]To the extent that Mesa may be relying on the alleged statements made by Conard
and Dowling, these statements are no more than stray remarks.  *See supra* at § VI(C).

[14]To the extent that Mesa is alleging that Verizon discriminated against him by
investigating allegedly fraudulent conduct, the court raises *sua sponte* that such claims must
be dismissed.  *See, e.g., Jackson*, 2006 WL 680471, at *9.  In particular, Mesa has not
established that an investigation qualifies as an adverse employment action.  *See McCoy v.
City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (per curiam) ("Adverse employment
actions include only ultimate employment decisions such as hiring, granting leave,
discharging, promoting, or compensating.") (alteration, citation, and internal quotation marks
omitted); *Dixon*, 2006 WL 1949501, at *8 ("[A]n employment action that does not affect job
duties, compensation, or benefits is not an adverse employment action for purposes of a
discrimination claim under Title VII.") (alteration in original) (quoting *Pegram v. Honeywell,
Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)) (internal quotation marks omitted).
    Mesa also alleges for the first time in his response brief that he was transferred from
Conard's sales team to Cross's sales team because of his national origin and disability.  The
court raises *sua sponte* that Verizon is entitled to summary judgment at least on the ground
that such transfer is not an adverse employment action.  *See Hockman v. Westward
Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004) ("A purely lateral transfer cannot
constitute an adverse employment action.") (citing *Burger Cent. Apt. Mgmt., Inc.*, 168 F.3d
875, 879 (5th Cir. 1999)); *Jackson*, 2006 WL 680471, at *9.

discrimination, and that, even if it did, Mesa failed to exhaust his administrative remedies, never complained of the conduct during his employment with Verizon, and cannot establish a prima facie case of harassment because the comments are not sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.

Mesa does not respond to this argument. He only restates his allegation, without pointing to supporting evidence in the record,[15] that Estrada was only paid minimum commissions and that this discriminated against Mesa on the basis of his national origin and disability. Accordingly, the court dismisses Mesa's discrimination claims to the extent they are based on how much Estrada was compensated.

## VIII

Mesa asserts that, after Verizon instituted its investigation, it suspended his commissions and never paid them. He alleges that this was due to his national origin and disability.

Verizon does not explicitly move for summary judgment on the Title VII and ADA claims to the extent they are based on nonpayment of commissions. But its arguments in support of dismissing Mesa's breach of contract claim establish that Verizon had a legitimate, nondiscriminatory reason for withholding the commissions: Mesa was not entitled

---

[15]*See, e.g., Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence.").

to the commissions he now seeks.  Verizon produces evidence that, in January 2010, Mesa signed a Statement of Acceptance, acknowledging that he was subject to the 2010 Verizon Sales Compensation Policy ("Compensation Policy") and the 2010 Verizon Account Executive, Senior Account Executive, and Solutions Executive United States Based Compensation Plan ("Compensation Plan") (collectively, "Sales Compensation Program"), which were effective from January 1 to December 31, 2010.  According to the Compensation Plan, Mesa was "eligible to earn commissions in addition to [his] base salary."  D. App. 34. He was also "eligible to receive monthly advances of unearned commissions;" and his eligibility for advancements was "tied directly to [his] performance as measured by [his] annual quota attainment."  *Id.*  These advances, however, did "not mature into earnings until the Annual Attainment Date," and therefore could "be recovered by Verizon at any time prior to the Annual Attainment Date in accordance with the terms and conditions outlined in the [Compensation Policy]."  *Id.* at 35.  Verizon maintains that the commissions Mesa seeks did not mature into earned commissions because, under the Compensation Policy, an advance "based on sales or revenue generated from fraud/misrepresentation" will "not mature into earned commissions."  *Id.* at 12 & 14.  Moreover, this determination was to be made "in the sole discretion of Verizon."  *Id.* at 14. Verizon therefore contends that it had the authority to recover the three commissions already paid, and to decline to pay Mesa the fourth commission, because they were generated from fraudulent sales.

Even assuming *arguendo* that Mesa can establish a prima facie case, Verizon has met its burden of production, and there appears to be no evidence that would enable a reasonable

trier of fact to find that Verizon's legitimate, nondiscriminatory reason for withholding the commissions is pretextual.  Accordingly, the court raises *sua sponte* that Verizon is entitled to summary judgment on the Title VII and ADA claims to the extent they are based on recoupment and nonpayment of commissions.

## IX

Mesa also seeks, *inter alia*, exemplary damages for his Title VII and ADA claims on the grounds that the "discrimination was done by Defendant with malice or with reckless indifference to Plaintiff's federally protected rights."  Am. Compl. ¶ 5.09; *see also id.* at ¶ 4.08.  Verizon moves for summary judgment, asserting that Mesa has failed to adduce supporting evidence.  Mesa responds by pointing to his deposition testimony, in which he averred that he heard Dowling and Cross stating that "[w]ell, this isn't . . . right.  Well, there's one way to get rid of him.  That's grounds for termination.  Let's get rid of the son of a b--ch."  P. App. 58.  After Mesa inquired, they responded that they were speaking about another individual, Amant.  Mesa testified that, he heard Cross, who "reads to himself when he types," writing in an email that "Mesa has become a concern."  *Id.*

The court concludes that Verizon is entitled to summary judgment dismissing Mesa's request for exemplary damages under Title VII and the ADA.  The court has already dismissed, or raised *sua sponte* dismissing, Mesa's claims to the extent they rely on all grounds except for his reasonable accommodation claim under the ADA.  Moreover, the only supporting evidence that Mesa has produced is his own self-serving and speculative testimony.  *Cf. Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165

(5th Cir. 2011) ("Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment.") (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam)).

X

Mesa asserts a breach of contract claim based on Verizon's failure to pay the commissions discussed *supra* at § VIII.

A breach of contract claim under Texas law requires proof of four elements: (1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendant's breach of the contract, and (4) damages to the plaintiff resulting from the breach.[16] *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003) (citing *Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied)).   Verizon contends that it did not breach the Sales Compensation Program because three commissions already paid and the fourth commission Verizon declined to pay were generated from fraudulent sales.   Mesa responds that summary judgment should be denied because "there are material questions of fact as to whether the ITFD sales were proper or not."  P. Br. 31.

The bare assertion that there is a genuine issue of fact is insufficient to create one. *Byers*, 2012 WL 677203, at *6 n.19 ("[U]nsubstantiated or conclusory assertions that a fact issue exists will not suffice.") (alteration in original) (quoting *Morris*, 144 F.3d at 380). Accordingly, the court dismisses Mesa's breach of contract claim.

---

[16]Because Verizon relies on Texas law, which Mesa does not dispute, the court will also apply Texas law.

XI

Mesa also alleges a claim for quantum meruit.  "As a general rule, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials."[17] *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) (citing *Black Lake Pipeline v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976); *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964)).  It is undisputed that the Sales Compensation Program governs the terms of Mesa's compensation.  Accordingly, the court dismisses Mesa's quantum meruit claim.[18]

XII

Regarding the grounds that the court has raised *sua sponte*, Mesa may file an opposition response, brief, and appendix within 21 days of the date this memorandum opinion and order is filed.  The court will evaluate Mesa's papers before deciding whether to invite Verizon to reply.  If Mesa does not file any opposition papers, this case will be tried on the remaining ground of Mesa's ADA claim—Verizon's alleged failure to accommodate under the ADA—which is neither the subject of Verizon's motion nor the court's decisions to raise summary judgment *sua sponte*.

---

[17]*See supra* at note 16.

[18]Mesa uses the same language—"there are material questions of fact as to whether the ITFD sales were proper or not," P. Br. 31— which the court has already rejected *supra* at § X.

* * *

For the reasons explained, the court grants Verizon's January 27, 2012 partial motion for summary judgment and raises *sua sponte* that Verizon is entitled to summary judgment on other grounds.  Mesa's reasonable accommodation claim under the ADA remains for trial.

**SO ORDERED.**

August 14, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE